UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARY ALICE BROWN,

     Plaintiff,

v.                         Case No.:  2:20-cv-487-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

**OPINION AND ORDER**

Plaintiff Mary Alice Brown filed a Complaint on July 8, 2020.  (Doc. 1).
Plaintiff seeks judicial review of the final decision of the Commissioner of the Social
Security Administration ("SSA") denying her claim for a period of disability and
disability insurance benefits.  The Commissioner filed the transcript of the
administrative proceedings (hereinafter referred to as "Tr." followed by the
appropriate page number), and the parties filed a joint memorandum detailing their
respective positions.  (Doc. 24).  For the reasons set forth herein, the decision of the
Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the
Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental impairment that can be
expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511.

## II.     Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on November 15, 2017, alleging a disability onset date of June 1, 2017. (Tr. at 10).[1] Plaintiff's claim was initially denied on March 5, 2018, and again upon reconsideration on July 10, 2018. (*Id.*). On July 18, 2018, Plaintiff filed a written request for hearing, which was held before Administrative Law Judge ("ALJ") Charles J. Arnold on July 9, 2019. (*Id.* at 10, 36-61). The ALJ issued an unfavorable decision on August 7, 2019. (*Id.* at 10-26). The Appeals Council subsequently denied Plaintiff's request for review on May 8, 2020. (*Id.* at 1-3). Plaintiff filed her Complaint in this Court on July 8, 2020, (Doc. 1), and the parties consented to proceed before a United States Magistrate Judge for all purposes, (*see* Docs. 16, 19). The matter is, therefore, ripe.

---

[1] The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017). The new regulations apply in Plaintiff's case because Plaintiff filed her claim after March 27, 2017.

III.     **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020. (Tr. at 12). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date, June 1, 2017. (*Id.*). At step two, the ALJ found that Plaintiff has the following severe impairments: "residuals from breast cancer; neuropathy; bone disorder; anxiety; depression; osteoporosis; and ischemic heart disease with atrial fibrillation (20 [C.F.R. §] 404.1520(c))." (*Id.*). The ALJ, at step three, determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.]

Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525 and 404.1526)." (*Id.* at 13).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to "perform medium work as defined in 20 [C.F.R. §] 404.1567(c) except only low stress work defined as no high production demands, entails only simple, routine, repetitive tasks with simple instructions, no interaction with the general public, and only occasional contact with others at the worksite." (*Id.* at 15). The ALJ also determined that Plaintiff "is unable to perform any past relevant work (20 [C.F.R. §] 404.1565)." (*Id.* at 24).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 [C.F.R. §§] 404.1569 and 404.1569a)." (*Id.* at 25). Specifically, the ALJ, relying on Vocational Expert ("VE") testimony, found that Plaintiff could perform the following jobs that exist in significant numbers in the national economy: Floor Waxer (DOT# 381.687-034); Spiral Binder (DOT# 653.685-030); and Window Cleaner (DOT# 389.687-014). (*Id.*). For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 1, 2017, through the date of this decision (20 [C.F.R. §] 404.1520(g))." (*Id.* at 26).

**IV.      Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence, *Richardson v.

Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are

conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create

a suspicion of the existence of a fact and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  *Foote v.

Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835,

838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that "the evidence preponderates

against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3

(11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district

court must view the evidence as a whole, taking into account evidence favorable as

well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*,

979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to

determine reasonableness of factual findings).

**V.      Analysis**

On appeal, Plaintiff raises two issues.  As stated by the parties, the issues are:

1.      Whether the ALJ accounted for all of the practical effects of Plaintiff's cancer, including side effects of radiation and chemotherapy, in the RFC or, in alternative, erred by not finding a closed period of disability; and

2.      Whether the ALJ erred in his analysis of Plaintiff's subjective complaints.

(Doc. 24 at 14, 33).  The Court addresses each issue in turn below.

**A.      The ALJ Failed to Assess Properly the Evidence of Record.**

Plaintiff argues that the ALJ erred by failing to include all of her limitations in her RFC because (1) "[t]he ALJ's rationales for discounting every medical opinion [were] glaringly deficient and unsupported by the record," (*see* Doc. 24 at 17-19), and (2) the ALJ did not consider "the totality of Plaintiff's treatment, recovery and side effects," (*see id.* at 19-21).

Specifically, Plaintiff notes that the medical opinions of record "plainly limit [her] to the performance of light work," but the ALJ disregarded them in finding her capable of performing medium work.  (*Id.* at 18).  Plaintiff also argues that the ALJ failed to fully acknowledge the effect of her chemotherapy and radiation treatment on her ability to function.  (*See id.* at 19).  Moreover, Plaintiff contends that "[t]he ALJ's reliance upon her watching television for 15 hours per day, is not even arguably supportive of the ability to stand and walk for most of the day, as the ALJ found."  (*Id.*).

Additionally, Plaintiff asserts that both her peripheral neuropathy, (*id.* (citing Tr. at 582, 576, 786, 865, 869, 976, 922, 851, 855, 1285)), and the "sheer volume of [her] treatments," (*id.* at 19-20 (citations omitted)), should have been sufficient to render her disabled. Plaintiff contends that, because she attended fifty-eight appointments from April 2017 through February 2019, she was precluded from working on a full-time basis as she would have required more than one absence per month. (*See id.* (citations omitted); *see also id.* at 20 n.6 (citations omitted)).

Finally, Plaintiff claims that the ALJ erred by failing to consider whether the "evidence describing the sheer volume of treatment between June 2017 and February 2019," established a closed period of disability. (*See id.* at 21-22). Specifically, Plaintiff argues that the ALJ needed to make separate RFC findings—one RFC finding for Plaintiff's limitations during her cancer treatment and one RFC finding for her limitations during the remainder of the adjudicated period. (*See id.*).

In response, the Commissioner contends that substantial evidence supports the ALJ's RFC finding for the entire period at issue. (*See id.* at 22-33). Specifically, the Commissioner asserts that the ALJ reviewed Plaintiff's treatment notes for the entire period, properly assessed the persuasiveness of every medical opinion, considered Plaintiff's activities of daily living, and made an appropriate RFC determination that Plaintiff could perform medium work. (*Id.* at 22-23). The Commissioner further supports her argument that the ALJ properly determined the persuasiveness of each medical opinion by asserting that the ALJ considered each opinion's supportability and consistency. (*Id.* at 27-28). Moreover, the Commissioner contends that the ALJ

sufficiently assessed both the frequency and the impact of Plaintiff's chemotherapy and radiation treatments in finding that Plaintiff maintained the ability to perform medium work.  (*See id.* at 29-31).  Finally, the Commissioner asserts that the ALJ did not err by failing to consider whether Plaintiff was entitled to a closed period of disability because (1) Plaintiff did not raise the issue before the ALJ and (2) her cancer treatment did not establish that she had disabling limitations.  (*See id.* at 31-33 (citations omitted)).

The Court analyzes below:  (1) whether the ALJ's determination of the persuasiveness of the medical opinions of record is supported by substantial evidence; and (2) whether the ALJ considered all of the evidence of record, including the impact and frequency of Plaintiff's cancer treatments, in determining Plaintiff's RFC.  The Court finds that remand is required on the second sub-issue.

### 1.    The ALJ Did Not Err in His Assessment of the Medical Opinion Evidence.

The Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017.  *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff filed her claim on November 15, 2017, (Tr. at 10), the revised regulations apply, *see* 20 C.F.R. § 404.1520c.  The regulations require that an ALJ apply the same factors in considering opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions.  20 C.F.R. § 404.1520c(a).

In contrast, under Eleventh Circuit precedent, the "treating source rule" requires the ALJ to afford "[t]he opinion of a treating physician . . . substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

At present, a question remains as to whether the Social Security Administration's 2017 revised regulations override the Eleventh Circuit's treating source rule. *Compare Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *6 (M.D. Fla. Aug. 5, 2021) ("Given the absence of any binding or persuasive guidance from the Court of Appeals, the Court is not willing to go as far as the Commissioner suggests and find that cases applying the 'good cause' standard are no longer good law, particularly given that *Winschel* [*v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011)] remains binding Eleventh Circuit precedent."), *with Marilyn Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("[The SSA's] new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."), *Douglas v. Saul*, No. 4:20-cv-00822-CLM, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021) ("[Based on the application of *Chevron* and *Brand X*,] the court will apply the 2017 regulations – not the treating physician rule – to the ALJ's evaluation of the opinion evidence."), *and Stemple v. Kijakazi*, No. 1:20-cv-485, 2021 WL 4060411, at *6 (N.D. Ohio Sept. 7, 2021) (collecting cases in support of the same proposition). At the

same time, while the Eleventh Circuit has not directly addressed the issue in a published opinion, it has considered it in a recent unpublished opinion, *Marilyn Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022).[2]  In *Matos*, the Court found that the ALJ's assessment of a treating source's medical opinion was legally sufficient where the ALJ only considered the medical opinion's supportability and consistency "in accordance with the SSA's new regulatory scheme."  *Id.*  The Court expressly stated the SSA's "new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source *or explain why good cause exists to disregard the treating source's opinion*."  *Id.* (emphasis added).

Here, Plaintiff fails to address the Commissioner's argument that the Social Security Administration's 2017 revised regulations invalidate the Eleventh Circuit's treating source rule.  (*See* Doc. 24).  Given Plaintiff's failure to address the issue and the Eleventh Circuit's recent opinion in *Matos*, the Court finds that the ALJ here is not required to demonstrate good cause to find a treating source's medical opinion unpersuasive.  However, even if the Eleventh Circuit's good cause requirement still applies, the result remains the same under both standards.

---

[2]  Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as binding precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

First, under the revised regulations, as to each medical source, the ALJ must consider:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 404.1520c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered.  *See* 20 C.F.R. § 404.1520c(b)(2).  In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source.  20 C.F.R. § 404.1520c(b)(1).  The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.  We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.  *See* 20 C.F.R. § 404.1520c(c)(1)-(2).  Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own

records and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Second, assuming the treating source rule survived the amended regulations, the ALJ must show "good cause" to discredit the opinion of a treating physician. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  "Good cause exists when the:  (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotations omitted) (citing *Phillips*, 357 F.3d at 1241). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis*, 125 F.3d at 1440; *contra Matos*, 2022 WL 97144, at *3-5.

Here, Plaintiff highlights that the state agency medical consultants and her treating physician, Dr. Perez-Gallardo, opined that Plaintiff is limited to light work. (*See* Doc. 24 at 17-18).  Nonetheless, the ALJ found that (1) Plaintiff maintained the RFC to perform medium work and (2) the state agency medical consultants', the state agency psychiatrist's, Dr. Perez-Gallardo's, and Dr. Kasprzak's medical opinions were unpersuasive.  (Tr. at 22-24 (citing. Tr. at 67-70, 83-85, 97-98, 102-105, 81, 99-101, 395-96, 402, 405-06, 994)).  Plaintiff states that "[t]he ALJ's

rationales for discounting every medical opinion are glaringly deficient and unsupported by the record." (Doc. 24 at 19). To assess whether the ALJ's medical opinion findings are supported by substantial evidence, the Court reviews below (a) how the ALJ determined the persuasiveness of each opinion and (b) whether good cause exists to discredit each opinion.

> **a.   Whether the ALJ Properly Determined the Persuasiveness of the State Agency Medical Consultants' Opinions.**

In evaluating the persuasiveness of Dr. Oliver's, Dr. Walker's, and Dr. Holmes' opinions, (*see* Tr. at 67-70, 83-85, 97-98, 102-05), the ALJ specifically noted that the opinions were inconsistent with the other evidence of record, (*see id.* at 22). There is also substantial evidence within the record to support the ALJ's determination. (*See id.* at 529-30, 551-52, 579-80, 602-03, 668, 849-50, 887, 950, 983, 996, 1047-48, 1241-42, 1270, 1290).

The state agency medical consultants opined that Plaintiff could only perform a reduced range of light work. (*Id.* at 67-70, 83-85, 102-05, 97-98). The ALJ found these opinions inconsistent "with the generally normal to no more than moderate findings by the claimant's primary care providers." (*Id.* at 22 (citations omitted)). The ALJ also noted that those opinions were inconsistent with Plaintiff's providers' records showing that Plaintiff tolerated her cancer treatment well and that she had generally normal objective examination findings. (*Id.* (citations omitted); *see also* Tr. at 16-18). The ALJ specifically noted that the opinions were inconsistent with both:

(1) consultative neurologist Dr. Kibria's May 8, 2018 comprehensive objective examination findings, which show that Plaintiff was essentially normal with "a normal gait and station, normal bilateral 5/5 and strength, and no evidence of weakness, pronation, or drift," except for "easy fatigability with repetitive testing," (*id.* at 22 (citing Tr. at 977)); and (2) consultative psychologist Dr. Kasprzak's May 10, 2018 disability evaluation where Dr. Kasprzak "essentially found [Plaintiff] normal on objective examination with only minor findings, such as below average remote memory, abstract reasoning, and intellectual ability," (*id.* (citing Tr. at 994)), and noted that Plaintiff "had no difficulty sitting, standing, walking, [or] handling objects," (*id.* at 992). Finally, the ALJ noted that the state agency medical consultants' opinions were inconsistent with Plaintiff's reported activities of daily living. (*Id.* at 22; *see also id.* at 992-94).

Upon review, the Court finds that the evidence cited by the ALJ supports his finding that the state agency medical consultants' opinions were inconsistent with the other evidence of record. (*See id.* at 529-30, 551-52, 579-80, 602-03, 668, 849-50, 887, 950, 977, 983, 992-94, 996, 1047-48, 1241-42, 1270, 1290).

**b.   Whether the ALJ Properly Determined the Persuasiveness of the State Agency Psychiatrist's Opinion.**

In evaluating the persuasiveness of Dr. Bohnert's and Psy.D. Laboy's opinions, (*id.* at 81, 99-101), the ALJ specifically noted that the opinions were inconsistent with the other evidence of record, (*see id.* at 22). Moreover, there is

substantial evidence within the record to support the ALJ's determination.  (*See id.* at 994, 1006-21).

The state agency psychiatrist and psychologist opined that Plaintiff did not have a severe mental impairment.  (*Id.* at 81, 99-101).  The ALJ found these opinions inconsistent Dr. Kasprzak's diagnosis that Plaintiff exhibited an anxiety disorder, (*see id.* at 994), and SalusCare, Inc.'s treatment notes suggesting that Plaintiff had depression, (*see id.* at 1006-21).  Notably, Plaintiff does not make a specific argument related to the ALJ's assessment of the persuasiveness of Dr. Bohnert's and Psy.D. Laboy's opinions.

Upon review, the Court finds that the evidence cited by the ALJ supports his finding that Dr. Bohnert's and Psy.D. Laboy's opinions were inconsistent with the other evidence of record.  (*See id.* at 994, 1006-21).

### c. Whether the ALJ Properly Determined the Persuasiveness of Dr. Perez-Gallardo's Opinion.

In evaluating the persuasiveness of Dr. Perez-Gallardo's opinion, (*see* Tr. at 395-96, 402, 405-06), the ALJ specifically noted that the opinion was unsupported by Dr. Perez-Gallardo's own notes and inconsistent with the other evidence of record, (*see id.* at 23).  There is also substantial evidence within the record to support the ALJ's determination.  (*See id.* at 528-30, 551-52, 579-80, 585-86, 602-03, 668, 849-50, 861, 865-67, 869-72, 887, 950, 983-84, 996, 1047-48, 1086, 1241-42, 1270, 1290).

Dr. Perez-Gallardo opined that Plaintiff could not perform several of her job duties, including "sitting, walking, lifting, [and] communicating," because of her

cancer treatment and atrial fibrillation.  (*Id.* at 395-96, 402, 405-06).  The ALJ found this opinion unsupported by Dr. Perez-Gallardo's own treatment notes in which he found Plaintiff to be "essentially normal with no more than occasional moderate findings," (*see id.* at 23), and inconsistent "with the generally normal no more than occasionally moderate findings" in the other evidence of record, (*see id.*). Specifically, the ALJ noted that Dr. Perez-Gallardo's May 22, September 7, and October 12, 2017, and January 9, February 21, March 22, May 9, June 19, and December 18, 2018 objective physical examinations all showed that Plaintiff exhibited normal physical and psychiatric findings, except that, beginning in February 2018, Dr. Perez-Gallardo noted decreased sensation in several of Plaintiff's toes due and eventually diagnosed Plaintiff with peripheral neuropathy.  (*See id.* at 16-17, 23 (citing Tr. at 551-52, 528-30, 585-86, 861, 865-67, 869-72, 983-84, 1047-48, 1086)).  The ALJ also specifically noted that Dr. Perez-Gallardo's opinion was inconsistent with both:  (1) consultative neurologist Dr. Kibria's May 8, 2018 comprehensive objective examination findings, which show that Plaintiff was essentially normal with "a normal gait and station, normal bilateral 5/5 and strength, and no evidence of weakness, pronation, or drift," except for "easy fatigability with repetitive testing," (*id.* at 23 (citing Tr. at 977); and (2) consultative psychologist Dr. Kasprzak's May 10, 2018 disability evaluation where Dr. Kasprzak "essentially found [Plaintiff] normal on objective examination with only minor findings, such as below average remote memory, abstract reasoning, and intellectual ability," (*id.* (citing Tr. at 994)), and noted that Plaintiff "had *no difficulty sitting*, standing, *walking*,

[or] handling objects," (*id.* at 992 (emphasis added)).  Finally, the ALJ noted that Dr. Perez-Gallardo's opinion was inconsistent with Plaintiff's reported activities of daily living, such as her ability to watch fifteen hours of television per day and independently perform household chores.  (*Id.* at 22; *see also id.* at 992-94).

Upon review, the Court finds that the evidence cited by the ALJ supports his finding that Dr. Perez-Gallardo's opinion was unsupported by the doctor's own notes and inconsistent with the other evidence of record.  (*See id.* at 528-30, 551-52, 579-80, 585-86, 602-03, 668, 849-50, 861, 865-67, 869-72, 887, 950, 977, 983-84, 992-94, 996, 1047-48, 1086, 1241-42, 1270, 1290).  Further, even considering Dr. Perez-Gallardo's status as a treating physician, the ALJ clearly articulated good cause for discrediting Dr. Perez-Gallardo's opinion when the ALJ showed that the opinion was inconsistent with the other evidence of record and unsupported by Dr. Perez-Gallardo's own medical records and objective physical examinations.

### d. Whether the ALJ Properly Determined the Persuasiveness of Dr. Kasprzak's Opinion.

In evaluating the persuasiveness of Dr. Kasprzak's opinion, (*see* Tr. at 994), the ALJ specifically noted that the opinion was unsupported by Dr. Kasprzak's own notes and inconsistent with the other evidence of record, (*see id.* at 24).  Moreover, there is substantial evidence within the record to support the ALJ's determination. (*See id.* at 992-94, 1006-21).

Dr. Kasprzak opined that Plaintiff's prognosis was "guarded for gainful employment."  (*Id.* at 994).  The ALJ found this opinion unsupported by Dr.

Kasprzak's own treatment notes in which she assessed Plaintiff's mental status and made "essentially normal" findings. (*See id.* at 24; *see also* Tr. at 994). Additionally, the ALJ found Dr. Kasprzak's opinion inconsistent with SalusCare, Inc.'s treatment notes finding that Plaintiff "had no more than moderate findings such as depressed mood and diagnosis of an adjustment reaction with depressed mood. (*See id.* at 24 (citing Tr. at 1006-21)). The ALJ also noted that Dr. Kasprzak's opinion was inconsistent with Plaintiff's reported activities of daily living, such as her ability to watch fifteen hours of television per day and independently perform household chores. (*Id.* at 22; *see also id.* at 992-94).

Notably, Plaintiff does not make a specific argument regarding the ALJ's assessment of the persuasiveness of Dr. Kasprzak's opinion.

Upon review, the Court finds that the evidence cited by the ALJ supports his finding that Dr. Kasprzak's opinion was unsupported by her own notes and inconsistent with the other evidence of record. (*See id.* at 992-94, 1006-21). Further, even considering Dr. Kasprzak's status as a treating physician, the ALJ clearly articulated good cause for discrediting Dr. Kasprzak's opinion when the ALJ showed that the opinion was inconsistent with the other evidence of record and unsupported by Dr. Kasprzak's own medical records and objective findings.

### e. Whether the ALJ Properly Assessed All Medical Opinions.

Related to all medical opinions, the Court is not persuaded by Plaintiff's broad arguments that the ALJ's persuasiveness determinations were insufficient because of

his reliance on Plaintiff's ability to watch television for fifteen hours a day and his alleged "fail[ure] to take into consideration the totality of Plaintiff's treatment, recovery and side effects."  (*See* Doc. 24 at 19 (citations omitted)).

First, while Plaintiff contends that her ability to watch television for fifteen hours a day does not relate to the ALJ's assessment of the medical opinions of record, (*see id.*), the Court disagrees and finds that Plaintiff's ability to watch television for a fifteen-hour period is arguably inconsistent with the medical opinions stating that Plaintiff:  (1) lacked the ability to sit, (*see* Tr. at 395, 406); (2) could only "[s]it (with normal breaks) for a total of:  [a]bout 6 hours in an 8-hour workday," (*id.* at 68, 83, 102); (3) had mild limitations in concentrating, persisting, or maintaining pace, (*id.* at 100); and (4) had a prognosis of "[g]uarded for gainful employment," (*id.* at 994).

Second, the Court finds that the ALJ considered the entire record in assessing the persuasiveness of every medical opinion, as evinced by his thorough analysis of the medical evidence in his decision, (*id.* at 16-21 (citations omitted)), and his citations to relevant records while assessing the consistency of the medical opinion evidence, (*id.* at 22-24 (citations omitted)).

In sum, the Court finds that the ALJ comprehensively analyzed the supportability and consistency of every medical opinion of record while determining the persuasiveness of each as required by 20 C.F.R. § 404.1520c.  Additionally, the Court finds that the ALJ's determinations of the persuasiveness of the medical opinions are supported by substantial evidence within the record.  Further, even

considering Dr. Perez-Gallardo's and Dr. Kasprzak's statuses as treating physicians, the ALJ clearly articulated good cause for discrediting their opinions.

Thus, the Court finds that the ALJ's decision is due to be affirmed as to this sub-issue.

### 2. The ALJ Failed to Properly Consider All Evidence of Record in Assessing Plaintiff's RFC.

As discussed above, Plaintiff contends that the ALJ erred by failing to "take into consideration the totality of Plaintiff's treatment, recovery and side effects." (Doc. 24 at 19-21).  More specifically, Plaintiff argues that the ALJ failed to acknowledge:  (1) the effect of her chemotherapy and radiation treatment, (*id.* at 19); (2) her peripheral neuropathy, (*id.* (citing Tr. at 582, 576, 786, 865, 869, 976, 922, 851, 855, 1285)); and (3) the "sheer volume of [her] treatments," (*id.* at 19-20 (citations omitted)).  Plaintiff asserts that, because she attended fifty-eight appointments from April 2017 through February 2019, she was precluded from working on a full-time basis as she would have been absent more than once a month. (*See id.* (citations omitted); *see also id.* at 20 n.6 (citations omitted)).

In response, the Commissioner contends that the ALJ sufficiently assessed the evidence of record in finding that Plaintiff maintained the ability to perform medium work.  (*See id.* at 29-33 (citations omitted)).  Additionally, the Commissioner asserts that "[s]imply engaging in intensive treatment is not enough to establish disability." (*Id.* at 30).  Further, the Commissioner argues that Plaintiff has not proven that her

treatment would have required her to miss work because she could have potentially balanced a work schedule with her treatments.  (*Id.*).

At step four of the sequential evaluation process, the ALJ must assess the claimant's RFC.  20 C.F.R. § 404.1520(a)(4)(iv).  During the RFC assessment, the ALJ must consider all relevant evidence of record.  20 C.F.R. § 404.1520(a)(3).  However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quotations omitted) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Here, upon reviewing the record, the Court finds that the ALJ considered the evidence related to the effects of Plaintiff's chemotherapy and radiation treatments. (*See* Tr. at 16-21).  To that end, the Court is not persuaded by Plaintiff's argument that the ALJ failed to consider the impact of Plaintiff's chemotherapy and radiation treatment on her ability to function.  (Doc. 24 at 19).  While Plaintiff provides multiple citations to support her contention, (*see id.* (citing Tr. at 582, 576, 786, 865, 869, 976, 922, 851, 855, 1285)), a review of the record and the ALJ's decision reveals that the ALJ expressly considered the cited records during step four of the sequential analysis, (*see* Tr. at 16-21 (citing Tr. at 789, 865, 869-70, 976, 849, 853, 856, 1291)).  Additionally, the ALJ considered the records on Plaintiff's peripheral neuropathy, (*id.* at 17, 20-21 (citing Tr. at 865, 867, 869-70, 1241-42)), and the effects of her chemotherapy and radiation treatments, (*id.* at 17-21 (citing Tr. at 602-03, 928-29,

965, 1241-42, 789, 1335-36, 893, 976-77, 1272, 696)).  Thus, to the extent that

Plaintiff argues the ALJ did not consider the evidence on Plaintiff's chemotherapy

and radiation treatment and their side effects, the Court is not persuaded.

However, the Court is persuaded by Plaintiff's argument that the ALJ failed to

consider the "sheer volume of [her] treatments."  (*See* Doc. 24 at 19-20 (citations

omitted)).

To begin, "whether the number of medical appointments affects [a plaintiff's]

ability to work is not an appropriate consideration for assessing [the plaintiff's RFC]

because that determination considers only the functional limitations and restrictions

resulting from medically determinable impairments."  *Cherkaoui v. Comm'r of Soc.*

*Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (citing SSR 96-8p, 1996 WL 374184

(July 2, 1996)).  Put differently, the number of medical appointments attended by

Plaintiff were "not a functional limitation caused by her impairments that would

affect her physical or mental capabilities" and did not render her disabled.  *Id.*

Nevertheless, while a considerable number of medical appointments do not render a

claimant disabled, the ALJ is still required to *consider* all relevant evidence of record,

including the "effects of treatment," such as the frequency and duration of treatment,

during his assessment of a plaintiff's RFC.  SSR 96-8p, 1996 WL 374184, at *5 (July

2, 1996).[3]

---

[3] "Social Security Rulings are agency rulings published under the Commissioner's
authority and are binding on all components of the Administration."  *Klawinski v.
Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*,
493 U.S. 521, 531 n.9 (1990)).  While Social Security Rulings are not binding on the

Here, the Court finds that the ALJ failed to properly consider the frequency and duration of Plaintiff's treatment in assessing Plaintiff's RFC.  (*See* Tr. at 16-21).

Upon a review of the ALJ's decision, the Court notes that the ALJ expressly discussed the relevant findings in:  (1) sixteen of Plaintiff's medical appointments with her Dr. Perez-Gallardo and ARNP Cajoux, (*id.* at 16-17 (citing Tr. at 555-57, 551-52, 548, 540, 536, 680, 537, 528-30, 585-86, 849, 853, 918-19, 856, 860-61, 865, 867, 869-70, 893-94, 1047-48, 1086)); (2) two of Plaintiff's emergency room visits, (*id.* at 17 (citing Tr. at 467-68, 1023, 1030)); (3) seven of Plaintiff's visits at Florida Cancer Specialists, (*id.* at 17-18 (citing Tr. at 602-03, 588-89, 928-29, 965, 1241-42, 1230-31, 1301)); (4) five of Plaintiff's appointments with Dr. Sandadi, who noted that Plaintiff completed six cycles of chemotherapy, (*id.* at 18 (citing Tr. at 789, 996-1003, 1335-36)); and (5) five of Plaintiff's appointments with her cardiologist, Dr. Arnold, (*id.* (citing Tr. at 612, 740, 773, 1248, 956-57, 962-63, 1159)).  Notably absent from the ALJ's decision, however, is an assessment or consideration of whether the frequency or duration of Plaintiff's medical appointments impacted her RFC during the relevant period.

While the Commissioner asserts that Plaintiff may have been able to schedule her medical appointments in a way that did not preclude work, (*see* Doc. 24 at 30), the ALJ failed to address or consider those possibilities, (*see* Tr. at 16-26).  The

---

Court, they are still afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance."  *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

Eleventh Circuit has held that "a court may not accept . . . counsel's *post hoc* rationalizations for agency actions." *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) (citation omitted). Instead, "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Id.* (citation omitted). Thus, the Court declines to accept Defendant's *post hoc* arguments regarding the frequency and duration of Plaintiff's medical appointments.

Additionally, the ALJ failed to address the VE's testimony that "an employer would allow one absence in a month" and "more than that would be a work preclusive limitation." (*See id.* at 59-60). To that end, Plaintiff's chemotherapy and radiation treatments required six cycles of chemotherapy every twenty-one days beginning on July 28, 2017, (*id.* at 603), and continuing through November 17, 2017, (*id.* at 580), followed by radiation therapy, (*id.* at 824),[4] followed by an additional eighteen cycle plan of chemotherapy every twenty-one days beginning on February 9, 2018, (*id.* at 817-18),[5] and continuing through February 15, 2019, (*id.* at 886-87, 965-66, 1231, 1234, 1241-42, 1300). Moreover, while the ALJ considered four of

---

[4] The ALJ does not discuss the duration of Plaintiff's radiation therapy, which the Commissioner concedes lasted for thirty days in 2018. (*See* Tr. at 16-26; Doc. 24 at 30).

[5] The Court notes that a majority of the medical records in the "History of Present Illness" and "Treatment" sections state that Plaintiff underwent eighteen cycles of "Adjuvant Herceptin" treatment from February 9, 2017, through February 15, 2019. (*See, e.g.*, Tr. at 817, 1300). However, this appears to be a scrivener's error as Plaintiff's "Adjuvant Herceptin" treatment did not begin until February 9, 2018. (*Id.* at 817-18, 888). It is unclear whether the ALJ was aware of this error because he did not discuss it.

Plaintiff's "Adjuvant Herceptin" treatments, (*see id.* at 17-18 (citing Tr. at 928-29, 965, 1241-42, 1230-31)), the ALJ did not acknowledge that Plaintiff underwent an eighteen-cycle treatment plan, requiring a medical appointment every twenty-one days from February 9, 2018, through February 15, 2019.  To be sure, the ALJ was not required to find Plaintiff disabled based solely on the frequency or duration of her medical appointments.  However, the ALJ was required to consider those factors in conjunction with the other evidence of record.  Here, there is no indication that the ALJ considered the actual frequency or duration of Plaintiff's treatments.  *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *see also Deandrea v. Berryhill*, No. 8:17-cv-2195-T-AEP, 2019 WL 1376520, at *3 (M.D. Fla. Mar. 27, 2019) (finding that the ALJ erred by failing to consider the frequency of a plaintiff's medical appointments).  Such consideration was especially relevant in Plaintiff's case because her condition required a significant number of appointments at intervals of twenty-one days during a prolonged period, the record shows that Plaintiff's appointments were not excessive or unnecessary, and Plaintiff does not rely on the frequency of her treatments alone to allege disability.  *See Deandrea*, 2019 WL 1376520, at *3.

The Court finds that the ALJ failed to consider all of the relevant evidence of record in determining Plaintiff's RFC—namely, the frequency of Plaintiff's medical appointments.  Moreover, while Plaintiff may have been able to maintain full-time work despite the frequency of her treatments, the ALJ still failed to address the issue or raise that possibility and the Court will "not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.  *Bloodsworth v. Heckler*, 703

F.2d 1233, 1239 (11th Cir. 1983).  Given the ALJ's apparent failure to consider the frequency of Plaintiff's medical appointments, the Court finds that the ALJ erred, and remand is warranted.  On remand, the ALJ must consider the frequency and duration of Plaintiff's treatments and explain how the course of treatment is reconcilable with the VE's testimony on permissible levels of absenteeism.

**B.    Plaintiff's Remaining Arguments.**

Plaintiff's remaining arguments focus on whether the ALJ sufficiently considered the other evidence of record.  Because the Court finds that remand is appropriate for the ALJ to consider the frequency of Plaintiff's treatment, the Court finds that the ALJ must re-evaluate all the medical evidence of record, including, but not limited to, whether Plaintiff may be entitled to a closed period of disability and whether Plaintiff's extensive work history bolsters her subjective symptom allegations as those questions may be impacted by the ALJ's consideration of the frequency of Plaintiff's treatment.  Accordingly, the disposition of the remaining issues would be premature.

**VI.    Conclusion**

Upon consideration of the parties' submissions and the administrative record, the Court finds the ALJ's apparent failure to consider the frequency of Plaintiff's medical appointments warrants remand.  Accordingly, the Court **ORDERS** that:

1.    The decision of the Commissioner is **REVERSED AND REMANDED** Pursuant to sentence four of 42 U.S.C. § 405(g).

2.   On remand, the Commissioner must:

> (1) consider the frequency and duration of Plaintiff's treatments; (2) explain how Plaintiff's course of treatment is reconcilable with the VE's testimony regarding permissible levels of absenteeism; and (3) re-evaluate all evidence of record.

3.   Any application for fees, costs, or expenses must comply with the Court's Standing Order on Management of Social Security Cases, *In re Administrative Orders of the Chief Judge*, Case No. 3:21-mc-1-TJC, Doc. 43 (Dec. 7, 2021).

4.   The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on January 14, 2022.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

27